JAMES SMITH *vs.* BOSTON ELEVATED RAILWAY COMPANY.
WALDO A. HACKETT *vs.* SAME.

Suffolk.    December 10, 1928. — March 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Street railway, In use of way, Contributory. *Actionable Tort. Police Officer. Practice, Civil,* Election.

In a declaration in an action of tort against a street railway company, the plaintiff alleged merely that he "was lawfully travelling in an automobile . . . that while he was so travelling, he received and suffered

bodily injuries in consequence of having been struck by one of the defendant's cars; . . . that his said injuries were caused by reason of the carelessness and negligence of the defendant, its agents and servants, in the management, propulsion and control of said car." At the trial it appeared that the plaintiff was a police officer and that he was riding on the left running board of an automobile when it came in contact with a street car of the defendant. There was evidence that there were two impacts between the electric car and the automobile; that the first impact turned up that part of the running board on which the plaintiff's foot rested and thereby prevented him from releasing it and freeing himself from a dangerous position between the car and the automobile, both of which had come to a stop; that in order to release the plaintiff's foot it was necessary to back the street car; that the defendant's motorman was told to back his car but did not do so and instead the car came forward again crushing the plaintiff's leg and rendering him unconscious. At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant moved "that the plaintiff be required to elect whether the cause of action upon which he will rely is the so called first striking or the so called second striking or impact." The motion was denied in each instance. *Held*, that

(1) Upon the evidence, the jury were justified in finding that the two impacts were so connected as to constitute a single cause of action: both impacts constituted a unified whole rather than a disconnected succession of events;

(2) The motion could not properly have been granted.

At the trial of the action above described, there was evidence for the plaintiff that the plaintiff, who had been assigned to traffic duty at a certain street in Boston, when riding on the running board of the automobile was assisting to a hospital a person who had been injured near the place where he had been stationed; that, approaching the intersection of two streets on one of which the defendant's car was, he held up his hand to prevent the street car, which had stopped at a white post on his left and was about to proceed, from coming forward; that the view of the motorman was unobstructed; that the plaintiff then turned to signal another street car which was approaching from the opposite direction, and that the first street car nevertheless ran into the automobile. *Held*, that

(1) Upon the issue of contributory negligence of the plaintiff, the burden of proof rested upon the defendant;

(2) In the circumstances, it could not rightly have been ruled that the plaintiff was negligent in riding upon the running board;

(3) The question, whether the plaintiff was in the exercise of due care, was for the jury.

(4) Although the plaintiff's signal, in spite of the fact that he was a police officer, in the circumstances carried no greater authority than the signal of any other individual, the question, whether the defendant's motorman was negligent, was for the jury;

(5) It was proper, in the circumstances, for the judge to refuse to rule that the plaintiff, "upon the evidence given by" himself, was "violating G. L. c. 90, § 24";

(6) It was proper for the judge to instruct the jury that the plaintiff could have been found to have violated G. L. c. 90, § 24, without being negligent.

Two ACTIONS OF TORT for personal injuries to both plaintiffs and for damage to an automobile of the second plaintiff. Writs dated April 14 and November 25, 1925.

The actions were tried together in the Superior Court before *Macleod*, J. Material evidence and exceptions saved by the defendant are described in the opinion.

At the close of the evidence, the defendant asked for the following among other rulings:

"14. If the automobile was driven into the intersection partly under the control of one plaintiff and partly under the control of the other plaintiff, then neither plaintiff was travelling in a careful manner with reference to themselves or other persons in their car or in other vehicles on the street, or the jury could so find."

"17-a. Both plaintiffs, upon the evidence given severally by themselves, were violating G. L. c. 90, § 24."

"17-d. The court is requested to instruct the jury as to the meaning of G. L. c. 90, § 24, as construed by the Court in *Commonwealth* v. *Pentz*, 247 Mass. 500."

In a supplementary charge, the judge stated to the jury:

"The only other thing I can recall at this moment by way of sins of omission or commission committed by the court in connection with his charge, and statement of the law, is that I did not give you a disquisition in regard to interrogatories and their function in the case, and in other cases. That is based upon the fact that a request on the part of the defendant, and is due to the fact that the defendant propounded an interrogatory to the plaintiff 'to describe fully and in detail how the alleged accident occurred, giving the number of the car, number of any employee of the defendant which you obtained. State what you did, and what happened to you in the order in which events took place.'

"We have an answer here in response to that question, filed by counsel for the plaintiff, in which they give as requested that the Elevated car was in charge of Conductor 2408, and operated by Motorman 2400, Elevated car 6224,

and outbound Elevated car 6213, in charge of Conductor 2253, and operated by Motorman 2303.

"Smith was riding on the left running board and had his leg jammed between the outbound car and the automobile he was riding to the City Hospital.

"It is the contention of the defendant here that that is not a sufficiently detailed and elaborate story in response to the interrogatories as they were put.   It does not appear from anything in this case that there was any objection made to the answer filed at the time, or any request for stating things in greater detail, but the objection is made that the witness in answer to that question ought to have given a detailed recital, showing the first impact and the second impact, and the answer as given here by simply — there is part of the answer I have not read.   About describing how the automobile arrived there, about which there is no question.   'It was caught; the car was caught between these two street cars; was in a collision with these two street cars, and Smith had his leg jammed between the outbound car and the automobile.'

"That is the answer, and the objection is not, as I understand it, so much to any question that that was the fact that his leg was jammed between the car and the automobile, but he should have said 'it was jammed between the car and the automobile and then the street car came forward a second time and hit him a second time and did further and additional injury, and my injuries were not due to one impact, but were due to two.'

"In so far as the interrogatories are concerned, of course they are propounded for the purpose of having one party, the defendant in a case of this kind, have some reasonable knowledge of the grounds upon which the plaintiff makes his case; makes out his case, or is trying to make out his case, and it is expected that in so far as is necessary the proper answer should be given, and answers are given under oath, and they can be brought into evidence by being read, as they were here.

"If that has any bearing on issue, you can consider it for what it may be worth, but I think it is not beyond my province, in trying to give you a correct picture of the situation,

to say that it is not expected, and certainly is not the practice as interrogatories are commonly answered, that a person in answer to an interrogatory of this kind is going to give the story in the same exact and complete detail that he would give the story when it is on the witness stand. The answer in the interrogatory is to be considered in view of the purpose for which it was drawn, and not upon the assumption that under these interrogatories all the facts and details will be brought out in such fashion as to obviate any necessity of putting the man on the stand at all, and trying out the conditions in the courtroom. Interrogatories have no such function as that, but if they have any reasonable bearing upon the issues in this case, you are to consider them.

"In that connection, counsel for the plaintiff suggested that they ought to know or were interested in knowing how fast this street car was going, and when that question was answered, there was testimony that the motorman was in conference with the superintendent and other officials of the road in regard to giving information in answer to that question, 'what occurred?' and the answer to that question was, 'I don't know.' The counsel for the plaintiff says that that is not a very illuminating answer; that doesn't help us a great deal, to know what the Boston Elevated Company is going to contend as to the speed at which this automobile was going at the time, and, as a matter of fact, it may be that they did not have any exact means of knowledge, and it covered an answer to the situation, and it may have been sufficient under the circumstances.

"So, when you are weighing interrogatories and their bearing on this case, have in mind that there are two sets of interrogatories here, and have them both for whatever additional light and leading you get from the interrogatories in deciding the issues in this case."

Counsel for the defendant then stated: "All I want to save on the supplementary instructions is the instruction regarding the interrogatories, as not meeting my request."

There were verdicts for the plaintiffs, respectively, in the sums of $4,750 and $900. The defendant alleged exceptions.

*J. E. Hannigan,* for the defendant.

*J. D. Graham,* for the plaintiff Hackett.

*S. L. Solomont,* for the plaintiff Smith.

CROSBY, J.    These are actions of tort; the first to recover for personal injuries, the second to recover for personal injuries and for damage to an automobile.    The declaration in the first case contained a single count and was in compliance with the statutory form 13, G. L. c. 231, § 147: it alleges that the plaintiff "was lawfully travelling in an automobile . . . that while he was so travelling, he received and suffered bodily injuries in consequence of having been struck by one of the defendant's cars; And the plaintiff says that his said injuries were caused by reason of the carelessness and negligence of the defendant, its agents and servants, in the management, propulsion and control of said car."

The plaintiff Smith was a police officer in Boston, assigned to traffic duty at the intersection of Commonwealth Avenue and Dartmouth Street.    On April 2, 1925, there was an accident on Commonwealth Avenue near Exeter Street resulting in injury to a woman.    Smith went to the scene of the accident, and, finding there an automobile, owned and driven by the plaintiff Hackett, which had been commandeered by another officer for the purpose of conveying the injured woman to the Boston City Hospital, he stepped upon the left running board.    The automobile proceeded down Commonwealth Avenue, turned into Dartmouth Street, approached the intersection of that street and Boylston Street, and, as it was crossing Boylston Street, collided with an outbound car of the defendant, causing injuries to both plaintiffs and damage to the automobile.    Although the evidence in connection with the accident was conflicting, the fact of the collision, and that both plaintiffs were injured and the automobile was damaged, were established by the verdict of the jury in each case.

The plaintiff Smith testified, in substance, that there were two impacts between the electric car and the automobile; that the first impact turned up that part of the running board on which his right foot rested and thereby prevented him from releasing it and freeing himself from a dangerous posi-

tion between the car and the automobile, both of which had come to a stop; that it was impossible to move the automobile and in order to release his foot it was necessary to back the car; and that he was not seriously injured by the first impact. There was testimony, however, of witnesses called by the defendant that the expression of his face and an outcry made by him indicated that he was in pain. There was evidence that the motorman was told to back his car but did not do so and instead the car came forward again crushing Smith's leg and rendering him unconscious.

At the close of the plaintiffs' cases, the defendant presented in each case the following motion: "And now, at the close of the plaintiff's evidence, no amendment of the declaration having been allowed, the defendant, not resting, moves that the plaintiff be required to elect whether the cause of action upon which he will rely is the socalled first striking or the socalled second striking or impact, the plaintiff having offered evidence of both strikings equivocally, leaving the defendant in doubt as to what claim of negligence and damages under the declaration it is called upon to meet." The presiding judge refused to rule upon the motions at that time, suggesting to the defendant's counsel that they be presented at the close of all the evidence; to such refusal the defendant excepted.

It was within the power of the judge to allow amendments even by adding further counts at any time before final judgment. G. L. c. 231, § 51. *Pizer* v. *Hunt,* 253 Mass. 321, 330, 331. *Ripley* v. *Taft,* 253 Mass. 490, 493. His refusal to consider the motions when first presented was not error. At the close of the evidence, the motions were again presented and were denied, subject to the defendant's exceptions.

It is the contention of the defendant that if there were two impacts, as the plaintiff Smith and other witnesses testified, there were two causes of action, one for each impact, and as the declaration in the first case contained but one count setting forth a single cause of action, and in the second case it being agreed that the two counts of the declaration may be regarded as one, the plaintiffs should have been required to

elect upon which they intended to rely. We are of opinion
that upon the evidence the jury were justified in finding that
the two impacts were so connected as to constitute a single
cause of action. They could have found that the first ap-
plication of force created a situation of imminent peril neces-
sitating immediate action in order to prevent still more
serious consequences to the plaintiffs, and that both impacts
constituted a unified whole rather than a disconnected suc-
cession of events. The fact that after the first impact the
automobile and street car had come to a full stop does not
separate all that preceded from that which followed as matter
of cause and effect. *Hartnett* v. *Tripp*, 231 Mass. 382, 385.
It could have been found that no independent force inter-
vened after the first injury to the plaintiffs; that the efforts
of the motorman to back the car were the natural, probable
and proximate consequence of a dangerous situation resulting
from the first impact; and that the act of the motorman
causing the second impact, by driving his car forward instead
of backing it away from the automobile, was an act of negli-
gence inseparably connected with the first impact, from which
additional injury came to the plaintiff Smith; it was a con-
tinued injury and not a distinct and independent injury.
In principle the two impacts were no more separate and in-
dependent transactions than is the commitment of an assault
and battery where several blows are struck. *Benson* v.
*Swift*, 2 Mass. 50. The acts of the motorman causing the
injury were connected and constitute a single cause of ac-
tion. *Trask* v. *Hartford & New Haven Railroad*, 2 Allen, 331.
*Goodrich* v. *Yale*, 8 Allen, 454. *Knowlton* v. *New York &
New England Railroad*, 147 Mass. 606, 608. *Bliss* v. *New
York Central & Hudson River Railroad*, 160 Mass. 447, 455.
The motions that the plaintiffs be required to elect whether
they would rely on the first or second impact could not
properly have been granted.

Of the defendant's first eight requests for rulings the
fourth and fifth were given; the others were based upon the
theory that the plaintiffs were required to elect and, for
reasons previously stated, were rightly denied. At the close
of the evidence the defendant moved in each case that a

verdict be directed in its favor, its contention being that as matter of law the plaintiffs were guilty of contributory negligence, and that there was no evidence of negligence by the defendant's motorman.

Upon the issue of contributory negligence the burden of proof rested upon the defendant.  G. L. c. 231, § 85.  At the time of the accident the plaintiffs were conveying an injured woman to a hospital.  There was evidence tending to show that as the automobile approached the intersection of streets its speed was reduced to four or five miles an hour; that Smith held up his hand as a signal to the motorman of the outbound car.  Smith testified that the car at that time was at a white post at a regular stopping place; that it was stopped and the doors were just closing; that "When he observed the doors closing he had the signal up for that car to stop"; that the view of the motorman was unobstructed and Smith could see him; that after signalling the motorman of the outbound car he turned to signal the motorman of an inbound car which was moving slowly.  Other witnesses testified that they saw Smith signal the motorman of the outbound car by waving his hand.  It is manifest that the signal of Smith, although he was a police officer, at that time carried no greater authority than the signal of any other individual, and the judge, in substance, so instructed the jury.  In view of the fact that the plaintiffs were conveying an injured person to a hospital, and the other evidence, it could not rightly have been ruled that Smith was negligent in riding upon the running board. It was for the jury to determine whether his so riding constituted negligence.  *Coyne* v. *Maniatty*, 235 Mass. 181, 185, and cases there collected.  *Terlizzi* v. *Marsh*, 258 Mass. 156. The question whether the plaintiffs were in the exercise of due care was for the jury.

It could not have been ruled that there was no evidence of negligence on the part of the defendant.  It could have been found that the motorman could see the automobile before it reached the intersection of streets; that he could see the signal given to him by Smith before the outbound car started from the white post; that when he first saw the automobile, his car had attained a speed of from eight to ten miles an

hour; and that he was negligent under the circumstances in starting the car before the automobile had passed over the outbound track.  The judge accurately instructed the jury upon the issues of due care and negligence.

The exceptions of the defendant to the refusal to give request 17a and to the alleged failure of the judge to charge adequately on request 17d, must be overruled.  Request 17a was rightly denied because upon the evidence offered by the plaintiffs it could not have been ruled that the plaintiffs had violated the provisions of G. L. c. 90, § 24, relating to the operation of motor vehicles.  Whether there was such violation was a question of fact for the jury and the judge in effect so ruled.  Request 17d was sufficiently and accurately covered by the charge.  The instruction that the plaintiffs could have been found to have violated the statute without being negligent was correct.  *Commonwealth* v. *Pentz,* 247 Mass. 500, 509.  *Commonwealth* v. *Vartanian,* 251 Mass. 355, 358. *Commonwealth* v. *Gurney,* 261 Mass. 309, 312.  As the judge in his instructions fully and correctly covered the question of dual control of the automobile by the plaintiffs, the defendant's exception to the refusal to give the fourteenth request cannot be sustained.

The defendant excepted to that part of the supplementary charge wherein certain interrogatories propounded by the defendant to the plaintiffs and the answers thereto which contained no reference to the second impact are dealt with. We are of opinion that the instructions given upon this issue were not prejudicial to the rights of the defendant.

We have examined all exceptions to the refusal to give requests presented by the defendant.  Some were not argued and therefore are treated as waived.  *Fay* v. *Hunt,* 190 Mass. 378.  Others, dealing with particular views of the evidence, were for that reason not improperly refused.  *Hicks* v. *New York, New Haven & Hartford Railroad,* 164 Mass. 424, 428. *Quinn* v. *Standard Oil Co. of New York,* 249 Mass. 194, 204. *Coates* v. *Bates,* 265 Mass. 444, 448.  The contention that the cause of Smith's injuries was conjectural is without merit.  *Toy* v. *Mackintosh,* 222 Mass. 430, cited by the defendant, can have no application in view of the undisputed

evidence in the case at bar that Smith was conscious follow-
ing the first impact.

We find no reversible error in the denial of the requests;
nor can the exceptions to parts of the charge be sustained.
It would serve no useful purpose to discuss them in further
detail.

*Exceptions in each case overruled.*